1
**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
2
Julia A. Luster (State Bar No. 295031)
3
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
4
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
5
E-Mail:  ltfisher@bursor.com
6
        jluster@bursor.com
7
**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
8
888 Seventh Avenue
New York, NY  10019
9
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
10
E-Mail: scott@bursor.com
11
*Counsel for Plaintiff*
12

13
## UNITED STATES DISTRICT COURT
14
## CENTRAL DISTRICT OF CALIFORNIA
15

16
AMANDA OLVERA, individually and
on behalf of all others similarly situated,
17

18
                    Plaintiff,
19
        v.
20
SPD SWISS PRECISION
DIAGNOSTICS GMBH, PROCTER &
21
GAMBLE CO., and ALERE, INC.,
22
                    Defendants.
23

24

25

26

27

28

Case No.   8:15-cv-2035

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

CLASS ACTION COMPLAINT

Plaintiff Amanda Olvera ("Plaintiff"), individually and on behalf of herself and all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit against SPD Swiss Precision Diagnostics GmbH, Procter & Gamble Co., and Alere, Inc. (collectively, "SPD" or "Defendants"), for misrepresenting the efficacy of their Clearblue Advanced Digital Pregnancy Test with Weeks Estimator ("Weeks Estimator" or the "Product").

2.     Since the Product was introduced in 2013, SPD has represented that Weeks Estimator as capable of estimating how many weeks a woman has been pregnant, notwithstanding:  first, that Weeks Estimator is not effective for that purpose; second, that SPD has expressly acknowledged that Weeks Estimator should not be used for that purpose; and, third, that the U.S. Food and Drug Administration ("FDA"), which regulates home pregnancy tests, specifically directed that Weeks Estimator not be marketed for that use.

3.     According to SPD, Weeks Estimator can, by measuring the concentration of a hormone in urine, estimate the possible range of weeks that may have passed since a woman ovulated.  However, as the FDA emphasized in clearing the Product for sale, there is a material difference between an estimate of how many weeks may have passed since a woman last ovulated and an estimate of how many weeks a woman has been pregnant.  The FDA cleared the Product to be marketed for the former use, but expressly prohibited SPD from marketing the Product as a means for estimating the length of pregnancy.  As the FDA pointed out in its clearance letter for the Product, only doctors can measure how long a woman has been pregnant, and they do so using an entirely different methodology than is employed

by the Product. Indeed, using the accepted methodology for measuring how long a woman has been pregnant, a doctor may estimate the length of pregnancy to be twice as long as what the Product might estimate to be the time that has passed since a woman ovulated. Accordingly, the FDA explicitly warned SPD of the danger to women if they are misled into believing that Weeks Estimator can be used to measure the length of their pregnancy and prohibited SPD from marketing the Product for that improper purpose.

4. By opting to begin marketing the Product pursuant to the FDA's clearance letter, SPD accepted the restrictions and limitations contained therein. However, in pursuit of profit, and without regard to the obvious danger to consumers, SPD immediately began a massive campaign to perpetuate the false claim that the Product can tell a woman how long she has been pregnant. It has implemented this wrongful and illegal campaign through virtually all means of communication, including, among other things, the labeling on the box in which the Product is sold, a widely-broadcast television commercial, internet advertising and point-of-purchase and other retail-level advertising. SPD has even gone so far as to hire a well-known actress to appear as a guest on nationally syndicated television programs like "The Doctors" to promote the Product, falsely claiming, in her words (after identifying herself as a spokesperson for SPD), that "it actually estimates how many weeks of pregnancy you're in."

5. SPD has promoted and continues to falsely promote the Product for that purpose even though the Product does not provide that estimate, the FDA determined that it cannot be marketed for that purpose, and SPD itself acknowledged – albeit in tiny print on the labeling for the Product – that women should not use Weeks Estimator for that purpose.

6. As the FDA specifically found in its clearance letter for the Product, it can be harmful to women if they were to use the Product to estimate how long they

have been pregnant. That is particularly true in the very precarious first trimester of pregnancy, when timing is critical to obtain appropriate prenatal care and, in certain circumstances, to the efficacy of alternatives for terminating pregnancy.

7.     SPD knew that consumers were confused about the ability of Weeks Estimator to estimate how many weeks pregnant they were, but continued to deceive them anyway.  For example, Susan Suarez, Clearblue's Brand Manager, stated that she and the marketing team did not "want to talk 'ovulation' other than when we have to, like on a graph, because people do not connect that to when they got pregnant."[1]

8.     On July 1, 2015, Judge Alison J. Nathan issued an opinion and order following a two-week bench trial finding that SPD engaged in "false advertising in violation of New York State law" and "intentional deception of an egregious nature" in its marketing of Weeks Estimator.  *See Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*, 2015 WL 4002468, at *1 (S.D.N.Y. July 1, 2015).

9.     The false and misleading labels on Weeks Estimator were material to consumers and served to differentiate Weeks Estimator from traditional pregnancy tests.  These labels allowed Defendants to charge a price premium for Weeks Estimator.  For example, Weeks Estimator commanded more than a 50% price premium over Clearblue's traditional pregnancy tests:

---

[1] *See Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*, 2015 WL 4002468, at *15 (S.D.N.Y. July 1, 2015).

| Brand | Quantity | Price | Unit Price |
|---|---|---|---|
| Clearblue Weeks Estimator | 2 count | $11.98 | $5.99 |
| Clearblue Plus Pregnancy Test | 2 count | $7.98 | $3.99 |

## **THE PARTIES**

10.    Plaintiff Amanda Olvera is a citizen of California who resides in Seal Beach, California.  In or about November 2014, Plaintiff Olvera purchased Weeks Estimator at a CVS store in Silk Beach, California.  Prior to purchasing Weeks Estimator, Plaintiff Olvera reviewed Weeks Estimator's labeling and packaging.  Specifically, she saw and relied upon the representations that Weeks Estimator would estimate how long she had been pregnant.  In making her purchase, Plaintiff Olvera understood these representations to be warranties that Weeks Estimator was capable of estimating how long she had been pregnant.  In reliance on these representations and warranties, Plaintiff Olvera paid a tangible increased cost for Weeks Estimator, which was worth less than represented because Weeks Estimator could not estimate how long a woman has been pregnant.  Accordingly, these representations and warranties were part of the basis of the bargain, in that Plaintiff Olvera attributed value to these promises and would not have purchased Weeks Estimator, or would have only paid for the simple pregnancy test delivered by Weeks Estimator, if she knew that Weeks Estimator was incapable of estimating how long a woman has been pregnant.  Plaintiff Olvera used Weeks Estimator as directed but did not receive an accurate estimate of how long she had been pregnant.

11.    Defendant Procter & Gamble Co. is incorporated in the State of Ohio, with a principal place of business at One Procter & Gamble Plaza Cincinnati, Ohio 45202.

12.     Defendant Alere, Inc. is incorporated in the State of Delaware, with a principal place of business at 51 Sawyer Road, Suite 200 Waltham, Massachusetts 02453.

13.     Defendant SPD Swiss Precision Diagnostic GmbH is a Swiss company with is principal place of business in Geneva, Switzerland.  Upon information and belief, Defendant SPD Swiss Precision Diagnostic GmbH is a joint venture between Procter & Gamble Co. and Alere, Inc.  Accordingly, Defendants Procter & Gamble Co. and Alere, Inc. are the parent companies of Defendant SPD Swiss Precision Diagnostic GmbH, and thus control SPD Swiss Precision Diagnostic GmbH.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of Weeks Estimator occurred within this District, and because Plaintiff purchased Weeks Estimator in this District.

## FACTUAL BACKGROUND

16.     Like other home pregnancy tests, SPD's Weeks Estimator is designed to tell a woman whether or not she is pregnant.  The Product is also, according to the FDA's December 10, 2012 clearance letter (the "Clearance Letter") (**Exhibit A** hereto), capable of estimating a range of weeks (i.e., 1-2, 2-3, or 3 or more) that may

have passed since a woman ovulated.

17.     Ovulation is a biological event – it is the point at which a woman's egg (or "ovum") is released from one of her ovaries.  The medical profession does not measure how long a woman has been pregnant with reference to ovulation.  Rather, the medical profession measures how long a woman has been pregnant based on the universally accepted convention that pregnancy begins at the time of a woman's last menstrual period ("LMP").  That occurs, on average, approximately two weeks before ovulation.  Thus, the method used by the medical profession to determine the length of a woman's pregnancy is significantly different from that utilized by the Product.

18.     The milestones for the timing of prenatal care and fetal development, as well as medical time limitations on methods for terminating pregnancy, are based on the convention used by medical professionals that pregnancy is deemed to begin at the time of a woman's last menstrual period.

**The FDA's Regulation of Home Pregnancy Tests and its Clearance Letter for the Product**

19.     Although they are available over-the-counter (i.e., without a prescription), home pregnancy test kits are considered to be medical devices and are regulated by the FDA.  The FDA does not permit a new home pregnancy test kit to be marketed unless the manufacturer has received clearance by the agency for the product to be marketed for a particular "intended use."  Pursuant to 21 CFR § 807.92(a)(5), "[a]n intended use statement includes a general description of the diseases or conditions that the device will diagnose, treat, prevent, cure, or mitigate, including a description, where appropriate, of the patient population for which the device is intended."

20.     When the FDA decides to clear a home pregnancy test kit to be marketed, it issues a "clearance letter" to the manufacturer specifying the intended

use (sometimes called "indications for use") for which it is permissible to market the product.  The FDA also issues a public "decision summary" regarding the clearance.

21.     In the Clearance Letter for Weeks Estimator, the FDA stated that it had:

> determined that there is a reasonable likelihood that [the Product] will be used for an intended use not identified in the proposed labeling and that such use could cause harm.

22.     Although the Clearance Letter did not expressly identify the "intended use not identified in the proposed labeling," the limitations and restrictions identified in the Clearance Letter make plain that the FDA did not want women to think they could use the Product to estimate how long they have been pregnant.  Thus, the Clearance Letter directed that "Weeks Estimator Results should not be expressed as 'weeks pregnant' and should only be explained as the number of weeks that may have passed since ovulation."  The Clearance Letter also instructed that "[p]erformance of Weeks Estimator should not be displayed on [the] box labeling…"

23.     The Clearance Letter also required that the Product's "indications for use" statement "***must be prominently displayed in all labeling, including pouch box, and carton labels*** … in close proximity to the trade name, of a similar point size and in bold and shall be conveyed accurately – including any limitations – in all promotional materials[.]" (emphasis added).

24.     Requiring that the statement of "indications for use" be prominently displayed on the package is particularly meaningful.  In words that remove any doubt that SPD's advertising is false, that statement provides, in relevant part, that the Product:

> *cannot be used to determine the duration of pregnancy or to monitor the progression of pregnancy.  Your doctor determines how many weeks pregnant you are based on the first day of your last menstrual period and ultrasound results. This test provides a different estimate that cannot be substituted for a doctor's determination of*

> *gestational age. Only a doctor can provide a reliable estimate of gestational age and only your doctor can monitor pregnancy progression.*

(emphasis in original). At the time Weeks Estimator launched, SPD failed to prominently include that warning on the box in which Weeks Estimator was initially sold pursuant to the FDA's instructions, and thereby flagrantly and falsely advertised the Product for the very purpose prohibited by the statement of indications for use.

### **SPD's False Advertising of the Product**

25.     Since the launch of the Product in August 2013, SPD has – in direct contravention of the FDA's restrictions and limitations in the Clearance Letter and in violation of California's consumer protection laws – consistently advertised it as being capable of estimating how many weeks a woman has been pregnant. SPD's false and misleading advertising of the Product as a means to estimate the length of pregnancy has included, among other things, the labeling on the outside of the box for the Product found on store shelves.

26.     Two versions of the packaging were in use from August 2013 to present. First the "Launch Packaging" was on store shelves from August 2013 to February 2014. After the FDA expressed concerns about the Launch Packaging, SPD began using the "Revised Packaging" in February 2014. But the new packaging did little to remedy the deception. Both versions communicated to consumers that Weeks Estimator was capable of measuring gestational age, though it was not.

27.     For both the Launch and Revised Packaging, the packaging clearly and unambiguously communicated that the Product can tell a woman how many weeks she has been pregnant. The Product name  – "Advanced **Pregnancy** Test With **Weeks Estimator**" (emphasis added) – is prominently displayed on the outside of the package alongside rectangular boxes that are intended to represent the Product's

digital results window and depict the results given by the Product in terms of weeks of pregnancy (*i.e.*, "**Pregnant 1-2 Weeks**"; "**Pregnant 2-3 Weeks**"; and "**Pregnant 3+ Weeks**"):



**Launch Packaging**



**Revised Packaging**

28.     The communication of the Product packaging for both the Launch and Revised Packaging is that Weeks Estimator can tell a woman how many weeks she has been pregnant – specifically that she is 1-2 weeks pregnant, 2-3 weeks pregnant,

or 3+ weeks pregnant.

**Weeks Estimator Cannot Estimate How Many Weeks A Woman Has Been Pregnant**

29.     The message conveyed by the packaging for Weeks Estimator is that it can estimate how many weeks a woman has been pregnant.  That message is false and misleading.  As discussed above, in clearing the Product, the FDA expressly found that it cannot be used to estimate how many weeks a woman has been pregnant.  The FDA's finding in this regard is correct – the medical profession dates pregnancy from a woman's last menstrual period, not from ovulation.  SPD itself acknowledges that this is the case by including the indications for use statement on the package insert for the Product and on a side panel of the box in which the Product is sold (albeit in inconspicuous fine print that will not be read or understood by consumers).

30.     Simply put, and as the FDA explicitly found, the Product does not estimate, and is incapable of estimating, how long a woman has been pregnant.  Thus, it is false and misleading for SPD to advertise the Product as being able to estimate how many weeks a woman has been pregnant.

**SPD Intentionally Deceived Consumers About Weeks Estimator's Benefits**

31.     There is ample evidence that consumers were misled into believing that Weeks Estimator was capable of measuring how many weeks pregnant they were.

32.     On April 24, 2014, a CBS affiliate in Los Angeles, California ran a story called "Pregnancy Test's Reported Inaccuracies Causing Distress In Expecting Mothers," reporting that an expectant mother who had purchased Weeks Estimator believed the product provided an estimate of weeks pregnant that was consistent with how her doctor would estimate weeks pregnant.  The woman became concerned, wondering if her "baby was not developing correctly," when her doctor told her that

she was further along in her pregnancy than the estimate provided by the product.[2]

33.     Another woman reportedly stated after using Weeks Estimator:  "Five weeks three days, but Clearblue indicated only 2-3 weeks … am thinking I need to prepare for the worst!"[3]

34.     SPD's public relations agency brought the news story to SPD's attention, but it recommended that SPD "make no proactive statement at this time and let the story fade away."  And that is precisely what SPD did.  Nothing.[4]

35.     Instead, SPD continued to intentionally mislead consumers into believing Weeks estimator could tell them how many weeks pregnant they were.  For example, Dr. Joanna Pike, SPD's Senior Global Pregnancy Product Manager, wrote an email to her colleagues stating:

> We should not suggest in U.S. that the product tells you "Weeks Pregnant" when we have been constrained by FDA to say "weeks since ovulation." Indeed, even outside of US, this product doesn't tell you weeks pregnant – if you are 1-2 weeks by [Weeks Estimator] then you are 3-4 weeks pregnant because the universal convention for dating pregnancy is from the LMP not from ovulation.... I think FDA would NOT approve if we used "Weeks Pregnant" in any materials and we are very likely to also confuse consumers and might end up with challenge/complaint.[5]

36.     Similarly, at a board meeting, a member raised concerns about the digital display screens containing "Pregnant 1-2," etc., noting:  "Need to be clearer what this means, i.e. from time of conception NOT LMP, we are Not saying what we are doing."[6]

---

[2] *See* http://losangeles.cbslocal.com/2014/04/27/pregnancy-tests-reported-inaccuracies-causing-distress-in-expecting-mothers/ (last visited Dec. 2, 2015).
[3] *Id.*
[4] *Church & Dwight Co.*, 2015 WL 4002468, at *20.
[5] *Id.* at *13.
[6] *Id.*

37.     And Kirsten Suarez, Clearblue's Brand Manager also stated that she and the marketing team did not "want to talk 'ovulation' other than when we have to, like on a graph, because people do not connect that to when they got pregnant."[7]

38.     In light of the above, it is easy to understand why SPD did not want to use the word "ovulation" in the Launch Packaging, and continued to downplay it in the Revised Packaging.

**<u>Harm Caused By SPD's False Advertising</u>**

39.     Plaintiff and members of the Class and California Subclass were misled by Defendants' misrepresentations regarding the ability of Weeks Estimator to estimate the length of time a woman has been pregnant.  This is the sole reason consumers purchase Weeks Estimator.

40.     The difference between Weeks Estimator as promised and Weeks Estimator as sold is significant because Weeks Estimator cannot estimate how long a woman has been pregnant.

41.     As aforementioned, the FDA expressly found that Weeks Estimator cannot be used to estimate how many weeks a woman has been pregnant.  Thus, consumers are left with a product that promises to tell women how pregnant they are, but that is incapable of doing so.

42.     Plaintiff and members of the Class and California Subclass would not have purchased Weeks Estimator, or would have only paid for the pregnancy detecting abilities delivered by Weeks Estimator, if they had known the truth regarding Weeks Estimator.

**<u>CLASS ACTION ALLEGATIONS</u>**

43.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Weeks Estimator (the "Class") and a subclass of Class

---

[7] *Id.* at *15.

members who purchased Weeks Estimator in California (the "California Subclass"). Excluded from the Class and California Subclass is any entity in which Defendants have a controlling interest, and officers or directors of Defendants, or persons who purchased Weeks Estimator for purposes of resale.

44.     Members of the Class and California Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and California Subclass number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

45.     Common questions of law and fact exist as to all members of Class and California Subclass and predominate over questions affecting only individual Class and California Subclass members.  Common legal and factual questions include, but are not limited to, whether Defendants' labeling, marketing, advertising, and promotion of Weeks Estimator was false and misleading.

46.     The claims of the named Plaintiff are typical of the claims of the Class and California Subclass in that the named Plaintiff was exposed to Defendants' false and misleading labeling, marketing, advertising, and promotion, purchased Weeks Estimator, and suffered a loss as a result of that purchase.

47.     Plaintiff is an adequate representative of the Class and California Subclass because her interests do not conflict with the interests of the Class and California Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class and California Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

48.     The class mechanism is superior to other available means for the fair

and efficient adjudication of the claims of Class and California Subclass members. Each individual member of the Class and California Subclass may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### (Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*) ("MMWA")

49.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of members of the Class and California Subclass against Defendants.

51.     Weeks Estimator is a consumer product as defined in 15 U.S.C. § 2301(1).

52.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

53.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

54.     Defendants' product, Weeks Estimator, has failed to meet a specified level of performance, namely, that Weeks Estimator is capable of estimating how many weeks pregnant a woman is for a specified period of time warranted by

Defendants, "5 days sooner" than other pregnancy tests, or alternatively, before the expiration date listed on the packaging.

55.     In connection with the sale of Weeks Estimator, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that Weeks Estimator is capable of estimating how many weeks pregnant a woman is.  Thus, a reasonable consumer would expect that Weeks Estimator is, in fact, capable of estimating how many weeks pregnant a woman is.

56.     However, Weeks Estimator does not conform to the express warranties because Weeks Estimator is not, in fact, capable of telling a woman how many weeks pregnant she is.

57.     By reason of Defendants' breach of express warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the MMWA, thereby damaging Plaintiff and Class members.  *See* 15 U.S.C. §§ 2301, *et seq*.

58.     Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' express warranties; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is.

59.     Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written and implied warranty, which either constitute the full purchase price of Weeks Estimator or the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and

expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class in connection with the commencement and prosecution of this action.

60.    On October 28, 2015, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with the MMWA.  Plaintiff's counsel sent Defendants a letter advising them that they violated of the MMWA and demanded that they make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit B**.

<u>**COUNT II**</u>

**(Breach of Express Warranty)**

61.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

62.    Plaintiff brings this claim individually and on behalf of members of the Class and the California Subclass against Defendants.

63.    In connection with the sale of Weeks Estimator, Defendants issued written warranties.  Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers expressly warranted that Weeks Estimator is capable of estimating the number of weeks a woman has been pregnant.

64.    Defendants' express warranties, and their affirmations of fact and promises made to Plaintiff and the Class and California Subclass regarding Weeks Estimator, became part of the basis of the bargain between Defendants and Plaintiff and the Class and California Subclass, thereby creating an express warranty that Weeks Estimator would conform to those affirmations of fact, representations, promises, and descriptions.

65.    Weeks Estimator is not, in fact, capable of estimating how many weeks a woman has been pregnant.

66.     Plaintiff and members of the Class were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' express warranties; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is.  As a result, Plaintiff and members of the Class and California Subclass have been damaged either in the full amount of the purchase price of Weeks Estimator or in the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.

67.     On October 28, 2015, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an express warranty and demanded that they make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit B**.

## COUNT III

### (Breach Of The Implied Warranty Of Merchantability)

68.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

69.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendants.

70.     Defendants are and were at all relevant times "merchants" within the meaning of the Uniform Commercial Code ("UCC").  Defendants manufactured, distributed, and marketed Weeks Estimator, which is a "good" within the meaning of the UCC.  Consequently, Defendants impliedly warranted that Weeks Estimator was

merchantable, including that it could pass without objection in the trade under the contract description, that it was fit for the ordinary purposes for which such goods are used, that it was of fair average quality within the description, that it was adequately labeled, and that it would conform to the promises or affirmations of fact made on its label.  However, each of these implied warranties were false with respect to the goods of the kind sold to Plaintiff and members of the Class and California Subclass.

71.    In reliance upon Defendants' skill and judgment and the implied warranties above, Plaintiff and members of the Class and California Subclass purchased Weeks Estimator.

72.    Weeks Estimator was not altered by Plaintiff or members of the Class and California Subclass.

73.    Weeks Estimator was defective when it left the exclusive control of Defendants.

74.    Defendants knew Weeks Estimator would be purchased and consumed by Plaintiff and members of the Class and California Subclass without additional testing.

75.    Weeks Estimator was not of fair average quality within its description, was not adequately labeled, and does not conform to the promises or affirmations of fact made on its label.

76.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class and California Subclass members were injured because (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' implied warranties; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how

many weeks pregnant a woman is.  As a result, Plaintiff and members of the Class California Subclass have been damaged either in the full amount of the purchase price of Weeks Estimator or in the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.

77.     On October 28, 2015, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-314, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an implied warranty and demanded that they make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit B**.

## COUNT IV

### (Unjust Enrichment/Common Law Restitution)

78.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

79.     Plaintiff brings this claim individually and on behalf of the members of the Class, and California Subclass against all Defendants.

80.     Plaintiff and members of the Class and California Subclass conferred benefits on Defendants by purchasing Weeks Estimator.

81.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and California Subclass members' purchases of Weeks Estimator.  Retention of those monies under these circumstances is unjust and inequitable because of Defendants' misrepresentations about Weeks Estimator, which caused injuries to Plaintiff and members of the Class and California Subclass because they would not have purchased Weeks Estimator if the true facts had been known.

82.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class and California Subclass is unjust and

inequitable, Defendants must pay restitution to Plaintiff and members of the Class and California Subclass for their unjust enrichment, as ordered by the Court.

## COUNT V

**(Violation Of California's Consumers Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq.*)**

83.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

85.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

86.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

87.    California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

88.    Defendants violated these provisions by misrepresenting that Weeks Estimator was capable of estimating the number of weeks a woman has been pregnant.

89.    Plaintiff and members of the California Subclass have been injured and harmed because:  (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant

a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' misrepresentations; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is.  As a result, Plaintiff Olvera and members of the California Subclass have been damaged either in the full amount of the purchase price of Weeks Estimator or in the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.

90.     On or about October 28, 2015, prior to filing this action, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a).  Plaintiff sent each Defendant a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit B**.

91.     Wherefore, Plaintiff seeks damages, and restitution for this violation of the CLRA.

## COUNT VI

**(Violation Of California's Unfair Competition Law,**

**California Business & Professions Code §§ 17200,** *et seq.***)**

92.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

94.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

95.     Defendants' misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

96.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

97.     Defendants violated the "fraudulent" prong of the UCL by making misrepresentations about Weeks Estimator, as described herein.

98.     Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' misrepresentations; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is. As a result, Plaintiff and members of the California Subclass have been damaged either in the full amount of the purchase price of Weeks Estimator or in the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.

## COUNT VII

### (Violation Of California's False Advertising Law,

### California Business & Professions Code §§ 17500, *et seq.*)

99.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

101.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,

et seq., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

102.    Defendants committed acts of false advertising, as defined by § 17500, by misrepresenting that Week Estimator was capable of estimating the length of time (how many weeks) a woman has been pregnant.

103.    Defendants knew or should have known, through the exercise of reasonable care that their representations about Weeks Estimator were untrue and misleading.

104.    Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

105.    Plaintiff and members of the California Subclass lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased Weeks Estimator if they had known that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is; (b) they paid a price premium for Weeks Estimator based on Defendants' misrepresentations; and (c) Weeks Estimator did not have the characteristics, uses, or benefits as promised, namely that Weeks Estimator is not capable of estimating how many weeks pregnant a woman is. As a result, Plaintiff and members of the California Subclass have been damaged either in the full amount of the purchase price of Weeks Estimator or in the difference in value between Weeks Estimator as warranted and Weeks Estimator as sold.

## COUNT VIII

### (Negligent Misrepresentation)

106.   Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

107.   Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendants.

108.   As discussed above, Defendants represented that Weeks Estimator was capable of estimating the length of time a woman has been pregnant.

109.   At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

110.   At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about Weeks Estimator.

111.   The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class and California Subclass members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class and California Subclass members to purchase Weeks Estimator.

112.   Plaintiff and Class and California Subclass members would not have purchased Weeks Estimator if the true facts had been known.

113.   The negligent actions of Defendants caused damage to Plaintiff and Class and California Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX

### (Fraud)

114.   Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

115.   Plaintiff brings this claim individually and on behalf of the members of

the Class and California Subclass against Defendants.

116.   As discussed above, Defendants represented that Weeks Estimator was capable of estimating the length of time a woman has been pregnant, and failed to disclose that Weeks Estimator is not capable of estimating the amount of time a woman has been pregnant.  Defendants had a duty to disclose this information.

117.   The false and misleading representations and omissions were made with knowledge of their falsehood.

118.   The false and misleading representations and omissions were made by Defendants, upon which Plaintiff and members of the Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and Class and California Subclass members to purchase Weeks Estimator.

119.   The fraudulent actions of Defendants caused damage to Plaintiff and members of the Class and California Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **PRAYER FOR RELIEF**

120.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendants, as follows:

A.   For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass;

B.   For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.   For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted

herein;

D.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.   For prejudgment interest on all amounts awarded;

F.   For an order of restitution and all other forms of equitable monetary relief; and

G.   For an order awarding Plaintiff and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: December 7, 2015          Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:_____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Counsel for Plaintiff*

I, Amanda Olvera, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendant conducts a substantial amount of business in this District.

3.      While living in California, I purchased a Clearblue Advanced Digital Pregnancy Test with Weeks Estimator ("Weeks Estimator") for my personal use.  I purchased Weeks Estimator after I read the packaging that said it would estimate how many weeks I had been pregnant.  The representations on the label were substantial factors influencing my decision to purchase Weeks Estimator.  I would not have purchased Weeks Estimator had I known that it was not capable of estimating how many weeks pregnant I was.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 4th, 2015 at Seal Beach, California.


_____
AMANDA OLVERA

**EXHIBIT A**

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**   Public Health Service

Food and Drug Administration
10903 New Hampshire Avenue
Document Control Center – WO66-G609
Silver Spring, MD  20993-002

December 10, 2012

SPD Swiss Precision Diagnostics GMBH
c/o SPD Development Company Ltd.
Mark Gittins
Priory Business Park
Bedford, MK44 3UP
United Kingdom

Re: k112870
    Trade/Device Name: Clearblue Advanced Pregnancy Test with Weeks Estimator
    Regulation Number: 21 CFR §862.1155
    Regulation Name: Human Chorionic Gonadotropin (HCG) Test system
    Regulatory Class: Class II
    Product Code: LCX
    Dated: November 28, 2012
    Received: December 3, 2012

Dear Mr. Gittins:

We have reviewed your Section 510(k) premarket notification of intent to market the device
referenced above and have determined the device is substantially equivalent (for the indications
for use stated in the enclosure) to legally marketed predicate devices marketed in interstate
commerce prior to May 28, 1976, the enactment date of the Medical Device Amendments, or to
devices that have been reclassified in accordance with the provisions of the Federal Food, Drug,
and Cosmetic Act (Act).  You may, therefore, market the device, subject to the general controls
provisions of the Act and the limitations described below.  The general controls provisions of the
Act include requirements for annual registration, listing of devices, good manufacturing practice,
labeling, and prohibitions against misbranding and adulteration.

The Office of In Vitro Diagnostics and Radiological Health (OIR) has determined that there is a
reasonable likelihood that this device will be used for an intended use not identified in the
proposed labeling and that such use could cause harm.  Therefore, in accordance with Section
513(i)(1)(E) of the Act, the following limitations must appear in the device's labeling:

1. Box Labeling:
    a) Performance of the Weeks Estimator should not be displayed on your box labeling. Box
       labeling should instruct users to see the package insert for test instructions and for more
       information on the Weeks Estimator.
    b) The terms "*Accurate or Accuracy*" should not be used on your box labeling.
2. Package Insert:

Page 2 – Mr. Gittins

a) Weeks Estimator results should not be expressed as "weeks pregnant" and should only be explained as the number of weeks that may have passed since ovulation.
b) Weeks Estimator performance should only be presented as follows:

| Result | Pregnant 1-2 | Pregnant 2-3 | Pregnant 3+ |
|---|---|---|---|
| What does this mean? | Your result is Pregnant and you may be 1-2 weeks since ovulation | Your result is Pregnant and you may be 2 and up to 3 weeks since ovulation | Your result is Pregnant and you may be more than 3 weeks since ovulation |
| How your doctor may date your pregnancy (weeks pregnant) | 3-4 weeks | 4-5 weeks | 5+ weeks |

o  The Weeks Estimator result is determined by the level of hCG in your urine. The level of hCG varies from woman to woman and therefore the Weeks Estimator may give misleading results. All results should be confirmed by your doctor, especially when making decisions about future medical care. Only your doctor can determine whether your pregnancy is healthy.

o  Your doctor determines how many weeks pregnant you are based on the first day of your last menstrual period and ultrasound results. This test provides a different estimate. Please note that the doctor may date your pregnancy differently from the information shown in this table, since pregnancy dating is dependent on the circumstances of the patient.

o  Agreement of Weeks Estimator results with clinical findings ranged widely from 45-99%.

Page 3 – Mr. Gittins

Furthermore, the following indications for use must be prominently displayed in all labelling, including pouch box, and carton labels, and instructions for use, in close proximity to the trade name, of a similar point size and in bold and shall be conveyed accurately – including any limitations -- in all promotional materials:

*"The Clearblue Advanced Pregnancy Test with Weeks Estimator is an over-the-counter urine hCG test which is intended for the detection of pregnancy. The test detects hCG in some cases from four days before the expected period (which is 5 days before the day of the missed period).*

*This test is only intended for individual use at home. It is not intended for use in a healthcare setting.*

*This test contains a "Weeks Estimator." The "Weeks Estimator" is meant solely as an estimate for the consumer and is not intended as a substitute for a doctor's clinical diagnosis. The 'Weeks Estimator' is not intended for multiple pregnancies. The estimate provided by the device may be inaccurate in these cases.*

*This test cannot be used to determine the duration of pregnancy or to monitor the progression of pregnancy. Your doctor determines how many weeks pregnant you are based on the first day of your last menstrual period and ultrasound results. This test provides a different estimate that cannot be substituted for a doctor's determination of gestational age. Only your doctor can provide a reliable estimate of gestational age and only your doctor can monitor pregnancy progression. You should seek qualified prenatal care if you suspect you are pregnant."*

Please note that the above labeling limitations are required by Section 513(i)(1)(E) of the Act. Therefore, a new 510(k) is required before these limitations are modified in any way or removed from the device's labeling.

The FDA finding of substantial equivalence of your device to a legally marketed predicate device results in a classification for your device and permits your device to proceed to the market. This letter will allow you to begin marketing your device as described in your Section 510(k) premarket notification if the limitation statement described above is added to your labeling.

If your device is classified (see above) into either class II (Special Controls) or class III (PMA), it may be subject to additional controls. Existing major regulations affecting your device can be found in the Code of Federal Regulations (CFR), Title 21, Parts 800 to 895. In addition, FDA may publish further announcements concerning your device in the Federal Register.

Please be advised that FDA's issuance of a substantial equivalence determination does not mean that FDA has made a determination that your device complies with other requirements of the Act or any Federal statutes and regulations administered by other Federal agencies. You must comply with all the Act's requirements, including, but not limited to: registration and listing (21 CFR Part 807); labeling (21 CFR Part 801); medical device reporting (reporting of medical device-related adverse events) (21 CFR 803); good manufacturing practice requirements as set

Page 4 – Mr. Gittins

forth in the quality systems (QS) regulation (21 CFR Part 820); and if applicable, the electronic product radiation control provisions (Sections 531-542 of the Act); 21 CFR 1000-1050.

If you desire specific information about the application of other labeling requirements to your device, or questions on the promotion and advertising of your device, please contact the Office of In Vitro Diagnostics and Radiological Health at (301) 796-5450.  Also, please note the regulation entitled, "Misbranding by reference to premarket notification"(21 CFR Part 807.97).  You may obtain other general information on your responsibilities under the Act from the Division of Small Manufacturers, International and Consumer Assistance at its toll-free number (800) 638-2041 or (301) 796-7100 or at its Internet address http://www.fda.gov/cdrh/dsma/dsmamain.html.

Sincerely yours,

## Alberto Gutierrez

Alberto Gutierrez, Ph.D.
Director
Office of In Vitro Diagnostics and Radiological Health
Center for Devices and
 Radiological Health

Enclosure

Page 5 -- Mr. Gittins

510(k) Number (if known):_____k112870_____

Device Name:____Clearblue Advanced Pregnancy Test with Weeks Estimator____

Indications for Use:·

The Clearblue Advanced Pregnancy Test with Weeks Estimator is an over-the-counter urine hCG test which is intended for the detection of pregnancy.  The test detects hCG in some cases from four days before the expected period (which is 5 days before the day of the missed period).

This test is only intended for individual use at home.  It is not intended for use in a healthcare setting.

This test contains a "Weeks Estimator." The "Weeks Estimator" is meant solely as an estimate for the consumer and is not intended as a substitute for a doctor's clinical diagnosis. The 'Weeks Estimator' is not intended for multiple pregnancies.  The estimate provided by the device may be inaccurate in these cases.

This test cannot be used to determine the duration of pregnancy or to monitor the progression of pregnancy.  Your doctor determines how many weeks pregnant you are based on the first day of your last menstrual period and ultrasound results.  This test provides a different estimate that cannot be substituted for a doctor's determination of gestational age. Only your doctor can provide a reliable estimate of gestational age and only your doctor can monitor pregnancy progression.  You should seek qualified prenatal care if you suspect you are pregnant.

| Prescription Use _____ | AND/OR | Over-The-Counter Use ____X____ |
|---|---|---|
| (Part 21 CFR 801 Subpart D) | | (21 CFR 807 Subpart C) |

(PLEASE DO NOT WRITE BELOW THIS LINE-CONTINUE ON ANOTHER PAGE IF NEEDED)

Concurrence of CDRH, Office of In Vitro Diagnostics and Radiological Health (OIR)

· Alberto Gutierrez
2012.12.10 14:31:57 -05'00'
Division Sign-Off
Office of In Vitro Diagnostics and Radiological Health

510(k) _____k112870_____

Page 1 of _1__

**EXHIBIT B**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

JOSEPH I. MARCHESE
Tel: 646.837.7410
Fax: 212.989.9163
jmarchese@bursor.com

October 23, 2015

**_Via Certified Mail – Return Receipt Requested_**

SPD Swiss Precision Diagnostics GmbH
47 route de Saint-Georges
1213 Petit-Lancy
Geneva, Switzerland

Procter & Gamble Co.
One Procter & Gamble Plaza
Cincinnati, Ohio 45202

Alere, Inc.
51 Sawyer Road, Suite 200
Waltham, Massachusetts 02453

Re:     *Demand Letter Pursuant to California Civil Code § 1782; Violation of Magnuson-Moss Act, 15 U.S.C. §§ 2301, et seq.; and Violation of U.C.C. §§ 2-313, 2-314*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by SPD Swiss Precision Diagnostics GmbH, Procter & Gamble Co., and Alere, Inc. (collectively, "SPD" or "you") pursuant to the Magnuson-Moss Warranty Act and numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9) on behalf of our client, Amanda Schultz-Olvera, and a class of all similarly situated purchasers of Clearblue Advanced Pregnancy Test with Weeks Estimator (the "Class"). This letter also serves as notice pursuant to U.C.C. § 2-607(3)(A) concerning the breaches of express and implied warranties described herein.

Clearblue Advanced Pregnancy Test with Weeks Estimator (the "Weeks Estimator") is labeled and advertised as being capable of estimating the number of weeks a woman has been pregnant. As you are aware, Judge Alison Nathan recently found that:

> Considered together, the name of the product ("Clearblue Advanced Pregnancy Test with Weeks Estimator") and the digital screens ("Pregnant // 1-2 Weeks," etc.), without any clarification, necessarily imply that the product tells a woman whether she is pregnant and, if she is pregnant, how many weeks pregnant she is. Moreover, the Weeks Estimator is a home pregnancy test – *i.e.*, an over-the-counter medical device – that is marketed to women for

> use before they see a doctor about their pregnancy, and women have historically relied on their doctors for an estimate of pregnancy duration. Thus, in the context of a home pregnancy test that also provides an estimate of "weeks," the overriding message to consumers is that this is an estimate of weeks pregnant that is consistent with a doctor's estimate of weeks pregnant.

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 4002468, at *18 (S.D.N.Y. July 1, 2015).

Accordingly, you expressly and impliedly warranted that the Weeks Estimator would tell a woman how many weeks pregnant she is, consistent with a physician's estimate. However, the message that the Weeks Estimator provided the same estimate of weeks pregnant as a doctor was false because doctors use a standard convention for expressing pregnancy duration based on weeks since a woman's last menstrual period ("LMP"), while the Weeks Estimator provided an estimate of weeks since ovulation. Because the Weeks Estimator cannot tell a woman how many weeks pregnant she is, consistent with a physician's estimate, you breached these warranties.

Our client purchased your Weeks Estimator in or about October 2014. By misrepresenting the ability of the Weeks Estimator to tell women how many weeks pregnant they are, you have violated and continue to violate the statutes cited herein.

On behalf of our client and the Class, we hereby demand that you immediately make full restitution to all purchasers of the Weeks Estimator of all purchase money obtained from sales thereof. We also demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.  All documents concerning the packaging and manufacturing of the Weeks Estimator;

2.  All documents concerning the labeling and advertising of the Weeks Estimator;

3.  All testing conducted on the Weeks Estimator;

4.  All consumer research concerning the Weeks Estimator;

5.  All documents concerning the pricing, advertising, marketing, and/or sale of the Weeks Estimator;

6.  All communications with customers concerning complaints or comments related to the Weeks Estimator;

7.  All communications with the United States Food and Drug Administration, or any other governmental agency, concerning the Weeks Estimator; and

8.  All documents produced in *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmbH*, Case No. 14-cv-585 (S.D.N.Y.).

BURSOR&FISHER
P.A.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

This letter also serves as a thirty (30) day notice and demand requirement under California Civil Code § 1782 for damages.  Accordingly, should you fail to rectify the situation on a class-wide basis within 30 days of receipt of this letter, we will seek actual damages, plus punitive damages, interest, attorneys' fees and costs.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Joseph I. Marchese